UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

MELANIE YOUNG,                    )
                                  )
                Plaintiff,        )
                                  )
        v.                        )        No. 1:18-cv-03976-DLP-TWP
                                  )
HARVEST LAND CO-OP, INC.,         )
                                  )
                Defendant.        )

## ORDER

On December 17, 2018, Plaintiff Melanie Young filed a Complaint against her

former employer, Defendant Harvest Land Co-Op, Inc. ("Harvest Land"), asserting

one claim of failure to pay overtime wages in violation of the Fair Labor Standards

Act ("FLSA"). (Dkt. 1). Presently pending before this Court are the Plaintiff's Motion

for Partial Summary Judgment, Dkt. [73] and the Defendant's Cross Motion for

Summary Judgment, Dkt. [77]. The Plaintiff seeks partial summary judgment on six

of the nine affirmative defenses pled by the Defendant in its Answer to Plaintiff's

Complaint. (Dkt. 13). The Defendant denies liability and seeks resolution of the

Plaintiff's claim through the entry of summary judgment. These motions are now

fully briefed and ripe for decision.

## I.    FACTUAL BACKGROUND

In February 1990, Plaintiff Melanie Young[1] was hired by the Madison

County Co-Op, which later merged into a multi-county organization, Ag One Co-Op.

---

[1] Formerly known as Melanie Corbin.

1

(Young Dep. 11:21-12:7, June 10, 2019, Dkt. 79-1 at 5). On September 1, 2007, Ag One Co-Op merged with Harvest Land. (Answer 2, Dkt. 79-7 at 2).

Harvest Land provides support services to farmers and other customers. (Complaint 2, Dkt. 79-3 at 2). While Ms. Young held various positions throughout her tenure, she was employed as the Senior Department Associate in the Liquid Fuels Department at Harvest Land starting around 2012 until her departure in November 2018. (Young Dep. 21:7-9, Dkt. 79-1 at 7, Complaint 2, Dkt. 79-3 at 2).

As the Senior Department Associate, Ms. Young was expected to fulfill the following job duties and responsibilities:

- Support Harvest Land Co-Op's stated Vision, Mission, and Business Values.
- Project a positive attitude to customers and employees at all times.
- Provide outstanding and courteous customer service.
- Carry out Harvest Land's compliance with "Duty to Warn" obligations with existing or new customers.
- Actively work to promote "Full Line" approach for customer buying.
- Maintain inventory reporting (energy position report).
- Work with PSR's in areas of record keeping.
- Coordinate with Controller and IT Support on updates or any problems with the degree day and Energy-Trac programs.
- Oversee inter-branch transfers.
- Oversee the processing of all sale ticket entries.
- Oversee the processing of all customer files.
- Oversee the processing of tank master entries.
- Oversee the processing of phone calls [and] that they are done in a timely and professional manner.
- Answer customer questions concerning invoicing and account statements.
- Receive Liquid Fuel location customer orders.
- Post prepayments and bookings.
- Invoice customers for products and services purchased.
- Prepare daily bank deposit in accordance with Harvest Land's policies. This includes checking daily receipts against actual cash, and entering deposit correctly in Harvest Land's computer system.
- Maintain branch files for customer, vendor, and risk information.

- Maintain adequate office supplies.
- Produce month-end and year-end reports from Harvest Land's computer system.
- Keep the Liquid Fuels Manager informed of operational, customer, vendors, or employee issues that may arise.
- Coordinate service calls and daily operational duties with Sr. Operations associate and/or appropriate team members.
- Perform additional work-related tasks/duties as assigned by management as deemed necessary for the success of Harvest Land

(Dkt. 79-1 at 28-29). On June 10, 2019, Ms. Young reviewed her job description and was given the opportunity to describe her day-to-day responsibilities. According to the Plaintiff, her primary duties involved providing full time secretarial support for the Liquid Fuels Department at Harvest Land. On a day-to-day basis, Ms. Young was primarily responsible for handling paperwork and completing data entry tasks. (Young Dep. 22:20-23, 26:8-9, Dkt. 79-1 at 8-9, Young Aff. ¶ 3, February 14, 2020, Dkt. 75-1). Ms. Young's job duties included taking orders from call-in customers who needed products, placing fuel orders, completing purchase orders, accounts receivable, accounts payable, and maintaining the fuel inventory for "five bulk plants, two stations, and . . . the Tom Wood car lot." (Young Dep. 23:3-16, Dkt. 79-1 at 8). According to Ms. Young, she essentially served as the "middleman" between Harvest Land and the customer. (Young Aff. ¶ 11, Dkt. 75-1). In explaining her role, Ms. Young stated:

> Customers would call Harvest Land with orders for liquid fuel products and the deadline for the delivery. I would then send these orders to Harvest Land's drivers. The drivers would then complete the order. Drivers did their own routing, scheduling, and determined whether to charge extra fees . . . After completing the delivery, the drivers would return an invoice ticket to me. I would input the information from the ticket into Harvest Land's computer program which would generate a bill for the customer.

3

(Young Aff. ¶ 10-12, Dkt. 75-1). In addition to product orders and handling matters for call-in customers, Ms. Young was also responsible for checking the fuel levels in Harvest Land's fuel tanks, and, if necessary, submitting an order to have the tanks refilled. (Young Aff. ¶ 14-16, Dkt. 75-1). Even though Ms. Young was the Senior Department Associate, no one reported to or worked under the Plaintiff. (Young Dep. 24:16-18, Dkt. 79-1 at 8).

When reviewing her job description during her deposition, Ms. Young testified that while it was generally accurate, there were some activities that she did not carry out, including Harvest Land's compliance with the duty to warn, (Young Dep. 29:6-14, Dkt. 79-1 at 9), management of the degree-day program, (Young Dep. 29:20-23, Dkt. 79-1 at 9), the purchase office supplies, (Young Dep. 52:11-19, Dkt. 79-1 at 15), or the maintenance of branch files for customer and risk information. (Young Dep. 30:2-21, Dkt. 79-1 at 10). When discussing the Energy-Trac program, Ms. Young explained that her role was limited to importing tickets from the delivery truck drivers' computers into Harvest Land's computer data system. (Young Dep. 53:18-23, Dkt. 79-1 at 15).

In this role, Ms. Young reported to the Central Liquid Fuels and Lubes Manager, Charlie Sellers. Because Mr. Sellers was responsible for different offices and regions in the Harvest Land Co-Op, he was rarely in the same office with Ms. Young. (Young Dep. 24:19-25, Dkt. 79-1 at 8). Because of her years of experience, Ms. Young was given significant latitude at the office. Mr. Sellers permitted Ms. Young to order inventory for the plants, stations, and car lots as needed. (Young

4

Dep. 25:6-26:14, Dkt. 79-1 at 9). According to the Plaintiff, everyone at Harvest Land worked together as a team. (Young Dep. 26:23-27:6, Dkt. 79-1 at 9). Ms. Young admitted that she spoke with Mr. Sellers every day to keep him abreast of happenings within the department. (Young Dep. 25:6-16, Dkt. 79-1 at 8). When something new arose that was out of her realm, the Plaintiff would contact Mr. Sellers for direction. (Young Dep. 27:1-14, Dkt. 79-1 at 9).

As Mr. Sellers' second in command, the Plaintiff handled almost all of the liquid fuels paperwork and anything else involving reporting that Mr. Sellers needed. (Young Dep. 25:2-26:8, Dkt. 79-1 at 8). Ms. Young also worked with Mr. Sellers to complete customer repairs and to schedule deliveries as needed. (Young Dep. 26:15-22, Dkt. 79-1 at 9). When a customer needed a repair, Ms. Young was responsible for scheduling one of Harvest Land's two service technicians to complete the repairs. (Young Aff. ¶ 19-20, Dkt. 75-1). Ms. Young's role in assisting Mr. Sellers with completing customer fuel contracts, however, was more limited. (Young Aff. ¶ 22-23, Dkt. 75-1). After receiving all the necessary pricing numbers from Mr. Sellers to plug into the customer fuel contract, the Plaintiff would simply fill in the blanks to complete the contract. (Young Aff. ¶ 24-25, Dkt. 75-1, Young Dep. 25:6-13, Dkt. 79-1 at 8).

In describing the relationship with her supervisor, the Plaintiff testified that Mr. Sellers did not "micromanage" her, and that because he trusted her, he gave her the authority to make independent decisions on behalf of the company. (Young Dep. 25:17-21, 27:1-6, Dkt. 79-1 at 8-9).

According to the Plaintiff, she began working overtime hours in approximately 2017, as a result of Harvest Land downsizing and consolidating offices in the area. (Young Dep. 45:16-25, Dkt. 79-1 at 13). Ms. Young assisted with the consolidation, and was required to travel approximately 3 times per week. (Young Dep. 45:22-46:24, Dkt. 79-1 at 13-14). In her deposition, the Plaintiff testified that in 2017 her overtime hours increased when she began traveling to Harvest Land's Monroe office, which required her to work 12 hours per day, in large part due to the 3.5 hours of driving to and from that office. (Young Dep. 45:16-46:4, Dkt. 79-1 at 13-14). Even though Plaintiff stated she had no supervisory or training responsibilities in her affidavit, she did admit in her deposition that she trained Harvest Land employees at the Monroe office in 2017. (Young Dep. 36:20-37:5, Dkt. 79-1 at 11).

Plaintiff was scheduled to work 8 hours per day Monday through Friday with a 60-minute unpaid lunch break. (Young Dep. 37:19-21, Dkt. 79-1 at 11). In her Complaint, the Plaintiff alleged that she regularly worked between 45 and 55 hours per week between 2017 and 2018. (Complaint 2, Dkt. 79-3 at 2). Even though she did not keep track of her hours, Ms. Young believed that she averaged approximately 50 hours of work per week. (Young Dep. 42:24-43:1, 45:6-16, Dkt. 79-1 at 13). Because Harvest Land opened at 8:00 a.m., Ms. Young explained that she typically arrived at work between 7:45 a.m. and 8:00 a.m., and although she "tried to leave at 5:00 p.m.," she generally left work between 5:30 p.m. and 6:00 p.m. (Young Dep. 33:15-24, 39:21-25, Dkt. 79-1 at 10, 12). Plaintiff occasionally relayed a

text message or phone call to Mr. Sellers before 8:00 a.m., although this did not occur often. (Young Dep. 54:8-23, Dkt. 79-1 at 16). She worked nights up to "a couple times a week," depending on the situation, the week, and the season. (Young Dep. 47:23-48:1-9, Dkt. 79-1 at 14, Young Aff. 2 ¶ 8; Dkt. 82-1). She used her cell phone for work calls and emails, and took calls before work, after work, and on weekends. (Young Aff. 2 ¶ 7, Dkt. 82-1). The Plaintiff also worked weekends to check inventories at the stations and Tom Wood car lot, and to respond to work emails. (Young Dep. 47:19-22, Dkt. 79-1 at 14, Young Aff. 2 ¶ 8, Dkt. 82-1).

During the workweek, Plaintiff typically ate lunch while working at her desk. (Young Dep. 37:22-38:16, Dkt. 79-1 at 11, Young Aff. 2 ¶ 4, Dkt. 82-1). She left work during her lunch hour to run personal errands, and beginning in August or September 2018, she started taking about 30 minutes to go home during her lunch hour twice a week, sometimes more depending on the day and season. (Young Dep. 38:5-8, 39:1-7, 41:17-24, Dkt. 79-1 at 12). During this time, however, she continued to take work calls over the lunch hour. (Young Aff. 2 ¶ 5, Dkt. 82-1).

On November 9, 2018, Ms. Young terminated her employment with Harvest Land. (Nichol Declaration ¶ 4, March 10, 2020, Dkt. 79-2). Plaintiff filed her complaint against Harvest Land on December 17, 2018 for failure to pay overtime wages in violation of the FLSA. Specifically, Ms. Young alleges that the Defendant failed to provide her overtime compensation for hours worked in excess of forty hours in 2017 and 2018. (Complaint 2, Dkt. 79-3 at 2). On February 17, 2020, Ms. Young filed a Motion for Partial Summary Judgment seeking to narrow the issues

in advance of trial. (Dkt. 73). On March 13, 2020, the Defendant filed a Cross

Motion for Summary Judgment on Plaintiff's claim for failure to pay overtime

wages. (Dkt. 77).

## II.   LEGAL STANDARD

Federal Rule of Civil Procedure 56(a) provides that summary judgment is

appropriate if "the pleadings, depositions, answers to interrogatories, and

admissions on file, together with the affidavits, if any, show that there is no genuine

issue as to any material fact and that the moving party is entitled to a judgment as

a matter of law." Fed. R. Civ. P. 56(a); *Eli Lilly & Co. v. Apotex, Inc.*, No. 1:17-cv-

02865-TWP-MPB, 2019 WL 7373418, at *3 (S.D. Ind. Dec. 30, 2019) (citing

*Hemsworth v. Quotesmith.com, Inc.*, 476 F.3d 487, 489-90 (7th Cir. 2007). This

notion applies equally where, as here, opposing parties each move for summary

judgment in their favor pursuant to Rule 56. *See E.E.O.C. v. AT & T Corp.,* No.

1:12-cv-00402-TWP-DKL, 2013 WL 6154563, at *3 (S.D. Ind. Nov. 20, 2013); *I.A.E.,*

*Inc. v. Shaver*, 74 F.3d 768, 774 (7th Cir. 1996).

"The existence of cross-motions for summary judgment does not, however,

imply that there are no genuine issues of material fact." *R.J. Corman Derailment*

*Servs., LLC v. Int'l Union of Operating Eng'rs*, 335 F.3d 643, 647 (7th Cir. 2003).

Rather, the process of taking the facts in the light most favorable to the

non-movant, first for one side and then for the other, may reveal that neither side

has enough to prevail without a trial. *Id*. at 648. "With cross-motions, [the Court's]

review of the record requires that [the Court] construe all inferences in favor of the

party against whom the motion under consideration is made." *O'Regan v.*

*Arbitration Forums, Ins.*, 246 F.3d 975, 983 (7th Cir. 2001) (quoting *Hendricks-*

*Robinson v. Excel Corp.*, 154 F.3d 685, 692 (7th Cir. 1998)).

## III.   DISCUSSION

### A.  Plaintiff's Motion for Partial Summary Judgment

The Plaintiff seeks summary judgment on six of Harvest Land's affirmative

Defenses, including:

- Affirmative Defense One: "Plaintiff's Complaint fails to state a claim upon which relief may be granted."

- Affirmative Defense Two: "The incident, injuries, and damages alleged in Plaintiff's Complaint were caused solely or contributed to by the acts, omissions, and conduct of the Plaintiff, and/or non-parties yet unidentified over whom Defendant had no control."

- Affirmative Defense Three: "Plaintiff's FLSA claim is not entitled to any recovery in this action because she was, and is, exempt from the minimum wage and/or overtime requirements of the FLSA."

- Affirmative Defense Six: "Plaintiff's claims are barred, in whole or in part, by the applicable statute of limitations."

- Affirmative Defense Eight: "Plaintiff may have failed to mitigate her damages, if any."

- Affirmative Defense Nine: "Plaintiff's claims are barred by the doctrines of waiver, estoppel, and/or laches."

(Dkt. 74 at 2, Answer 3, Dkt. 79-7 at 3). Plaintiff argues that summary judgment

should be granted as to these six affirmative defenses because the Defendant failed

to support them with any facts either in its Answer or discovery responses. (Dkt. 74

at 2). By allowing these conclusory defenses to proceed without supporting facts, the

Plaintiff maintains that she is deprived of notice of the facts Harvest Land intends to prove at trial. (Dkt. 74 at 2-3).

In its response, Harvest Land does not object to the dismissal of Affirmative Defenses One, Two, Eight, and Nine. Harvest Land, however, opposes the Plaintiff's contention that it failed to sufficiently plead Affirmative Defenses Three and Six in accordance with the Federal Rules of Civil Procedure. (Dkt. 78 at 2). Accordingly, the Plaintiff's request for partial summary judgment on Affirmative Defenses One, Two, Eight, and Nine is **GRANTED**. The Court will now address the sufficiency of Harvest Land's Affirmative Defenses Three and Six.

### i.   *Affirmative Defense Three*

Plaintiff argues that the Defendant is precluded from asserting Affirmative Defense Three because the Defendant failed to provide a factual basis to support its contention that Ms. Young is subject to the FLSA bona fide administrative exemption.[2] (Dkt. 74 at 5). Specifically, the Plaintiff argues that the Defendant failed to provide factual support for this defense in its Answer or in its answers to Plaintiff's interrogatories. (Dkt. 74 at 5). Thus, the Plaintiff argues, the Court should grant summary judgment in favor of the Plaintiff on Affirmative Defense Three. (Dkt. 74 at 5).

In response, Harvest Land asserts that it properly pled Affirmative Defense Three in its Answer because it set forth a short and plain statement demonstrating

---

[2] As explained *infra* in Section III(B)(i), the FLSA requires employers to pay employees overtime pay for any hours worked over 40 hours per week, unless they fall within a certain exemption set forth in the FLSA. 29 U.S.C. §§ 207, 213. Some workers employed in an "administrative capacity" are amongst those exempt from the overtime requirements of the FLSA. 29 U.S.C. § 213(a)(1).

that Harvest Land intended to prove that Ms. Young's FLSA claim is not entitled to any recovery because she fell within the FLSA's administrative exemption. (Dkt. 78 at 9). Moreover, relying on its Answer, the Case Management Plan, its statement of defenses, and discovery responses, Harvest Land maintains that it has made clear that it intends to prove that Ms. Young was exempt from the FLSA overtime provisions if this case proceeds to trial. (Dkt. 78 at 9-10).

In reply, the Plaintiff argues that although the Defendant recited the administrative exemption in its Answer and discovery responses, until it filed the Cross Motion for Summary Judgment the Defendant never articulated the specific facts used to support Affirmative Defense Three. (Dkt. 81 at 2-3). The Plaintiff contends that because the Defendant's Answer and discovery responses consisted of legal conclusions and failed to provide the facts upon which the administrative exemption is based, Harvest Land has waived the right to assert this defense at trial. (Dkt. 81 at 3).

The FLSA administrative exemption is an affirmative defense which "a party must affirmatively state" in a responsive pleading. *See* Fed. R. Civ. P. 8(c); *Yi v. Sterling Collision Ctrs., Inc.*, 480 F.3d 505, 507 (7th Cir. 2007); *Lymperopulos v. Vill. of Norridge*, No. 16 C 11548, 2018 WL 6324914, at *2 (N.D. Ill. Dec. 3, 2018). Affirmative defenses are subject to all pleading requirements; thus, they must set forth a "short and plain statement of the defense" that gives the other party fair notice of the nature of the defense. *Leonard v. Trustees of Ind. Univ.*, No. 1:19-cv-00963-JRS-MJD, 2019 WL 3306181, at *2 (S.D. Ind. July 23, 2019) (citing *Heller*

*Fin., Inc. v. Midwhey Powder Co.*, 883 F.2d 1286, 1294 (7th Cir. 1989)); Fed. R. Civ.

P. 8(a). The purpose of this Rule "is to avoid surprise and undue prejudice to the

plaintiff by providing [the plaintiff] notice and the opportunity to demonstrate why

the defense should not prevail." *Venters v. City of Delphi*, 123 F.3d 956, 967 (7th Cir.

1997). If a defendant fails to raise affirmative defenses in the answer, "those

defenses are deemed waived." *Castro v. Chi. Housing Auth.*, 360 F.3d 721, 735 (7th

Cir. 2004).

Here, the Defendant pled the "administrative exemption" affirmative defense

in its February 12, 2019 Answer to the Plaintiff's Complaint. (*See* Answer 3, Dkt.

79-7 at 3). The Defendant reasserted this defense in the parties' proposed case

management plan (Dkt. 79-8 at 2), and in the Defendant's statement of defenses.

(Dkt. 79-9 at 1).

The Plaintiff's First Set of Interrogatories included a request to "describe the

factual basis" for Affirmative Defense Three. (Dkt. 75-2 at 4). In response, the

Defendant answered:

> . . . Subject to and without waiving the foregoing objections,
> Plaintiff's primary job duties were related to the management
> and general business operations of Defendant and included the
> exercise of discretion and independent judgment with respect to
> matters of significance. See also, Plaintiff's job description
> produced in Defendant's Response to Plaintiff's Request No. 10.

(Dkt. 79-10 at 2). Defendant's Response to Plaintiff's Request for Production No. 10

stated "[s]ee job description produced herein" and attached the Harvest Land Senior

Department Associate job description signed by the Plaintiff on December 6, 2012.

(Dkt. 75-3 at 6-8).

The Plaintiff cites to *Heller Fin., Inc. v. Midwhey Powder Co.*, 883 F.2d 1286, 1294 (7th Cir. 1989) in support of her contention that, based on the Defendant's Answer and "vague reference to discovery materials," she is unable to determine what facts the Defendant relies on in support of its argument that the Plaintiff is subject to the administrative exemption. (Dkt. 74 at 2-3, 5). The Court disagrees.

The Court finds that Harvest Land's Affirmative Defense Three statement that "Plaintiff's FLSA claim is not entitled to any recovery in this action because she was, and is, exempt from the minimum wage and/or overtime requirements of the FLSA" is a short and plain statement sufficient to place the Plaintiff on notice that the Defendant intends to argue that the Plaintiff's overtime wage claim is subject to the FLSA administrative exemption. (*See* Answer 3, Dkt. 79-7 at 3). Moreover, throughout the case the Defendant consistently asserted this defense, including in the parties' proposed case management plan, its statement of defenses, during the Plaintiff's deposition, and in its interrogatory and request for production responses. Additionally, the primary focus of Plaintiff's June 10, 2019 deposition was the Plaintiff's job duties at Harvest Land, which allowed the parties to explore the defense further. (*See* Young Dep., Dkt. 79-1). In its responses to the Plaintiff's First Set of Interrogatories, Harvest Land maintained that Ms. Young fell under the administrative exemption of the FLSA because her primary job duties were related to the management and general business operations of the Defendant, and she was permitted to exercise her discretion and independent judgment with respect to matters of significance at Harvest Land. (Dkt. 79-10 at 2).

Plaintiff is correct in that *Heller* does hold that affirmative defenses are subject to all pleading requirements, and that affirmative defenses will be stricken when they are insufficient on the face of the pleadings. 883 F.2d at 1294. The Court, however, finds that Harvest Land has provided sufficient factual support in its Answer and discovery responses to put Ms. Young on notice of the factual basis and the evidence it intends to use at trial with respect to this defense. Accordingly, the Court **DENIES** the Plaintiff's request for summary judgment on Affirmative Defense Three.

### ii.    *Affirmative Defense Six*

The Plaintiff also maintains that the Defendant is precluded from asserting Affirmative Defense Six because the Defendant failed to provide any factual support for its legal conclusion that Ms. Young's claims are barred by the statute of limitations. (Dkt. 74 at 8).

The Defendant contends that it properly pled Affirmative Defense Six and is "asserting it to the extent Plaintiff seeks to pursue damages beyond the two-year limitation period." (Dkt. 78 at 2).

In reply, the Plaintiff argues that the Defendant cannot assert Affirmative Defense Six because at no point prior to the filing of its Cross Motion for Summary Judgment did the Defendant provide any factual allegations to support its legal conclusion or even identify the applicable limitations period. (Dkt. 81 at 2). Ms. Young maintains that if "Harvest Land had pled [Affirmative Defense Six] with the specificity and supporting facts that it includes in its [response to the partial motion

for summary judgment], the defense would have been proper. (Dkt. 81 at 2). Because those facts are absent from the Answer, the Plaintiff maintains that Harvest Land is not entitled to assert them for the first time at the summary judgment phase. (Dkt. 81 at 2).

The default limitations period for an unpaid overtime claim brought under the FLSA is either two or three years, depending on whether the violation was willful. *See* 29 U.S.C. § 255; *Howard v. City of Springfield, Ill.*, 274 F.3d 1141, 1144 (7th Cir. 2001). Generally, the limitations period stops running on a plaintiff's claims once she files her complaint. 29 U.S.C. § 256. Because the statute of limitations is an affirmative defense, it is defendant's burden to establish that plaintiff's claims are barred as untimely. *See* Fed. R. Civ. P. 8(c); *Drake v. U.S.*, No. 1:13-cv-0961-TWP-DML, 2015 WL 7288627, at *1 (S.D. Ind. Nov. 16, 2015). If the defendant fails to assert the applicable statute of limitations in its answer, "the statute of limitations will not act as a bar to the plaintiff's claim." *Brown v. Presstime Graphics, Inc.*, No. 2:13-cv-425-WTL-DKL, 2016 WL 6067885, at *1 (S.D. Ind. Oct. 17, 2016).

In this case, the Plaintiff filed her Complaint on December 17, 2018 and alleged that for two years, in 2017 and 2018, the Defendant failed to pay her overtime wages as required by the FLSA. (Dkt. 79-3 at 2). The Defendant, in its Answer, asserted that the Plaintiff's claims are barred, in whole or in part, by the applicable statute of limitations. (Dkt. 79-7 at 3).

The Plaintiff argues that because the Defendant failed to clarify that it is asserting the FLSA statute of limitations specific to the Plaintiff's potential claim for willful violations in its Answer, the Defendant cannot assert it for the first time during the summary judgment phase. (Dkt. 81 at 3). The Court rejects this argument. The notice pleading standard requires a defendant to put the plaintiff on notice of the defenses asserted, but does not require the assertion of "specific facts or legal theories." *Beanstalk Grp., Inc.,* 283 F.3d at 868. This short and plain general statement put the Plaintiff on notice of the Defendant's intent to assert the applicable two- or three-year statute of limitations. Because the Defendant has provided adequate notice to the Plaintiff of its intent to assert the statute of limitations affirmative defense, the Court **DENIES** the Plaintiff's request for summary judgment on Affirmative Defense Six.

### B. Defendant's Cross Motion for Summary Judgment

Presently before this Court is Defendant's Cross Motion for Summary Judgment, which seeks to resolve Ms. Young's overtime claim against Harvest Land. (Dkt. 77). The Defendant maintains that Ms. Young falls within the FLSA's administrative exemption for overtime purposes and, thus, her overtime wage claim is barred. Even if the Court finds that Ms. Young is non-exempt for purposes of summary judgment, Harvest Land maintains that Ms. Young's claim still fails because she is not able to present evidence that she actually performed work for which she was not compensated. (Dkt. 78).

### i.   *Fair Labor Standards Act Bona Fide Administrative Exemption*

Harvest Land maintains that Ms. Young's FLSA overtime wage claim fails because she is exempt from the requirements of 29 U.S.C. § 207 through the so-called "administrative exemption." The FLSA requires employers to pay employees overtime pay for any hours worked over 40 hours per week, unless they fall within a certain exemption set forth in the FLSA. 29 U.S.C. §§ 207, 213; *Blanchar v. Standard Ins. Co.*, 736 F.3d 753, 756 (7th Cir. 2013); *Carter v. Ind. State Fair Comm'n*, No. 1:11-cv-852-TWP-TAB, 2012 WL 4481350, at *1 (S.D. Ind. July 17, 2012) (citation omitted). Workers employed in a "bona fide administrative capacity" are amongst those exempt from the overtime requirements of the FLSA. 29 U.S.C. § 213(a)(1). The Secretary of Labor has issued a three-part test for determining whether an employee is exempted, including:

> (1) The employee must be salaried and paid at least $455 per week;
>
> (2) The employee's primary duties must be the performance of office or non-manual work "directly related to the management or general business operations of the employer or the employer's customers;" and
>
> (3)  The employee's primary duty must include "the exercise of discretion and independent judgment with respect to matters of significance."

*Matthews v. Bronger Masonry, Inc.*, 772 F. Supp. 2d 1004, 1011 (S.D. Ind. 2011) (citing 29 C.F.R. § 541.200(a)). In analyzing the applicability of this exemption, the burden falls on Harvest Land to establish that Ms. Young is exempt from the FLSA's overtime requirements. *Blanchar*, 736 F.3d at 756; *Corning Glass Works v.*

*Brennan*, 417 U.S. 188, 196-97 (1974). Applying this three-part test requires "a thorough, fact-intensive analysis of the employee's employment duties and responsibilities." *Bigger v. Facebook, Inc.*, 947 F.3d 1043, 1052 (7th Cir. 2020) (citing *Schaefer-LaRose v. Eli Lilly & Co.*, 679 F.3d 560, 572 (7th Cir. 2012)). As discussed in greater detail below, the Court finds a material issue of fact as to whether Ms. Young was properly classified by Harvest Land as an exempt employee under the FLSA.

With respect to the first prong, the Defendant argues, and the Plaintiff does not contest, that the undisputed facts demonstrate that the Plaintiff was paid on a fixed salary of not less than $455 per week. (Dkt. 78 at 13, Young Dep. 32:18-24, Dkt. 79-1 at 10). As such, the Court finds this fact undisputed and that the Defendant has established the first element of the bona fide administrative exemption.

### a. *Whether Plaintiff's Primary Duties Are Directly Related to Management or General Business Operations of the Defendant*

Next, the Court must examine whether Harvest Land has established the second element of the administrative exemption, which evaluates whether Ms. Young's primary duties were the performance of office work "directly related to the management of general business operations of the employer or the employer's customers." The Defendant argues that because the Plaintiff regularly engaged in administratively exempt duties, namely those related to the management or general business operations of Harvest Land, her position satisfies the second element of

18

the administrative exemption. (Dkt. 78 at 14). Defendant maintains that it is undisputed that the Plaintiff's duties consisted of office tasks and non-manual work. (Dkt. 78 at 13). The Defendant also contends that the Plaintiff's work was directly related to Harvest Land's general business operations. (Dkt. 78 at 14). Specifically, the Defendant argues that the Plaintiff's responsibilities of overseeing purchase orders, accounts receivables, and accounts payable; contacting customers; setting fuel pricing; and scheduling tech service department repairs were important duties directly related to Harvest Land's liquid fuels operation. (Dkt. 78 at 14). Thus, the Defendant asserts, the Plaintiff meets the second element of the administrative exemption. (Dkt. 78 at 15).

In response, Ms. Young argues that Harvest Land has failed to produce any evidence that would demonstrate that her primary duties were related to the general operations of Harvest Land's business. (Dkt. 81 at 6). The Plaintiff, pointing to her first affidavit, argues that her primary duties – processing customer fuel orders, sending out service orders, and completing fuel contract forms – were related to Harvest Land's core business function, and not its management or general business operations. (Dkt. 81 at 6-7). Ms. Young argues that even if "Harvest Land's designation of evidence could be construed to establish that her primary duty relates to the running of Harvest Land's business, [Ms. Young's] affidavit in which she specifies the allocation of her time creates an issue of fact which should be resolved at trial." (Dkt. 81 at 7).

19

With respect to the second element of the administrative exemption test, the

Code of Federal Regulations explains:

> An employee's ***primary duty*** must be the performance of work
> directly related to the management or general business
> operations of the employer or the employer's customers. The
> phrase "directly related to the management or general business
> operations" refers to the type of work performed by the employee.
> To meet this requirement, ***an employee must perform work
> directly related to assisting with the running or servicing
> of the business***, as distinguished, for example, from working on a
> manufacturing production line or selling a product in a retail or
> service establishment.

29 C.F.R. § 541.201(a) (emphasis added). Under the Department of Labor

regulations, "primary duty" means the principal, main, major, or most important

duty that the employee performs. 29 C.F.R. § 541.700. Determination of an

employee's primary duty must be based on all the facts in a particular case, with

the major emphasis on the character of the employee's job as a whole. *Id.* Work

directly related to management or general business operations includes work in

functional areas such as finance, accounting, budgeting, purchasing, procurement,

internet and database administration, and similar activities. 29 C.F.R. § 541.201(b).

The Seventh Circuit has stated that "whether a duty is exempt may turn on the

enterprise's core function – that is, the central revenue generator – and the

employee's involvement in it. *Bigger*, 947 F.3d at 1053 (citing *Blanchar*, 736 F.3d at

753 (holding that an insurance company employee's duties satisfied the "directly

related" standard because the employee "did not directly engage in the sales" of any

insurance plans, but "merely assisted salespeople with those sales"); *Schaefer-

LaRose*, 679 F.3d at 574-77 (holding that pharmaceutical sales representatives'

duties satisfied the "directly related" standard because the core function of the employer was "the development and production of pharmaceutical products" and the representatives' work supported that core function but was distinct from it, and the representatives did not make individual sales); *Verkuilen v. MediaBank, LLC*, 646 F.3d 979, 981-82 (7th Cir. 2011) (finding that an account manager for a software development company met the "directly related" standard because employee acted as an intermediary between the employer's software developers and the client advertising agencies, was "not a salesman" for an electronics store, and was not a technician fielding customers' phone calls).

In this case, Harvest Land's core business function is providing support services to farmers and other customers. (Complaint 2, Dkt. 79-3 at 2). During 2017 and 2018, the Plaintiff worked in a secretarial position as a Senior Department Associate in the Liquid Fuels Department. (Young Dep. 21:7-9, Dkt. 79-1 at 7, Complaint 2, Dkt. 79-3 at 2). Although the Plaintiff acknowledged that the Senior Department Associate position description detailed certain roles and responsibilities, she testified that her actual responsibilities differed in some respects. (Young Dep. 28:11-25, 29:1-25, 30:1-16, Dkt. 79-1 at 9-10). The Plaintiff handled liquid fuels support through her data entry work, and 90-95% of her job was paperwork related. (Young Dep. 22:20-23, 26:8-9, Dkt. 79-1 at 8-9, Young Aff. ¶ 3, Dkt. 75-1). Specifically, Plaintiff's responsibilities consisted of taking orders from customers, doing purchase orders, receivers, accounts receivable, accounts payable, and taking care of the fuel inventory for five bulk plants, two stations, and

the Tom Wood car lot. (Young Dep. 23:3-6, 13-16, Dkt. 79-1 at 8). The Plaintiff also completed data entry, checked on fuel levels for Harvest Land customers, and scheduled repair jobs and deliveries as dictated by her supervisor. (Young Aff. ¶ 9, 13-16, 18, Dkt. 75-1). Ms. Young's data entry involved sending out product orders and service orders, and placing fuel orders. (Young Aff. ¶ 4, Dkt. 75-1).

In *Bigger*, the plaintiff brought a FLSA suit against her employer, Facebook, for failing to pay overtime wages. 947 F.3d at 1047. Facebook moved for summary judgment on Bigger's FLSA claim, arguing that Bigger was subject to the FLSA administrative exemption. *Id*. at 1051-52. Although the parties had established Bigger's duties, presenting advertising solutions to clients, and Facebook's core function, the sale of advertisement on its electronic platforms, the Seventh Circuit found that factual issues existed regarding the extent to which Bigger also "performed analytical, consultation work" which related to the general functions of Facebook and was distinct from her job to sell advertisements. *Id*. at 1054-55.

Reviewing the evidence in the light most favorable to the Plaintiff, when examining Harvest Land's core function and the Plaintiff's primary duties at Harvest Land, the Court finds that the Plaintiff's duties are related to the management or general business operations of Harvest Land. Here, the evidence shows that as the Senior Department Associate in the Liquid Fuels Department, Plaintiff's primary job responsibilities involved assisting with the running of Harvest Land's business. There is little evidence that Ms. Young provided any services directly to customers; instead, she primarily spent her time completing

22

paperwork, sending out product orders, placing fuel orders, and sending out service orders as directed by her supervisor. The Plaintiff's primary duties involved handling Harvest Land's financial paperwork and assisting her supervisor in completing customer requests by submitting service orders to two Harvest Land technicians. (Young Dep. 26:7-20, Dkt. 79-1 at 9). The Court finds that Ms. Young's primary duties allowed her supervisor to engage in one of Harvest Land's core business functions, namely providing various fuel services to Harvest Land's customers. (Dkt. 83 at 4).

Plaintiff also argues that, even if the Court considers her duties to generally relate to the operations of Harvest Land's business, Ms. Young's affidavit in which she specifies the allocation of her time creates an issue of fact which should be resolved at trial. (Dkt. 81 at 7). While the Regulations provide that the amount of time spent performing exempt work can be a useful guide in determining the primary duty of an employee . . . time alone is not the only applicable test. 29 C.F.R. § 541.700(b). The Plaintiff's affidavit demonstrates that her primary duties involved supporting Harvest Land's liquid fuels business, thereby satisfying the second element of the administrative exemption test. (*See* Young Aff. ¶ 3-27, Dkt. 75-1).

Reviewing the evidence in the light most favorable to the Plaintiff, the Court finds that no genuine issue of material fact exists regarding whether the Plaintiff's primary responsibilities in the Liquid Fuels Department directly related to the management or general business operations of the Defendant. As such, the Court

finds that the Defendant met its burden of proving the second element of the bona fide administrative exemption test.

### b. Whether Plaintiff's Duties Included the Exercise of Discretion and Independent Judgment with Respect to Matters of Significance

In discussing the final element of the administrative exemption, the Defendant argues that the Plaintiff's primary job duties included the exercise of discretion and independent judgment. (Dkt. 78 at 15-16). In response, the Plaintiff contends that she did not have the necessary authority to satisfy the third element because she was not permitted to exercise her discretion, nor did she have the potential to affect outcomes. (Dkt. 81 at 10). In her response brief, Ms. Young compared her role to that of a McDonald's drive-through employee in that she took customer orders, used a set formula provided by her manager to calculate fuel prices, and generated an invoice. (Dkt. 81 at 8-9). While the Plaintiff testified that her supervisor was not a micromanager, Ms. Young argues that this was a result of performing routine clerical tasks for over two decades, and applying pre-determined formula prices to an invoice, not because she had discretion to make significant decisions. (Dkt. 81 at 8).

The third element of the bona fide administrative exemption test requires that the employee's primary duty include the exercise of discretion and independent judgment with respect to matters of significance. The Regulations delineate certain factors to consider when determining whether an employee exercises discretion and independent judgment with respect to matters of significance:

[W]hether the employee has authority to formulate, affect, interpret, or implement management policies or operating practices; whether the employee carries out major assignments in conducting the operations of the business; whether the employee performs work that affects business operations to a substantial degree, even if the employee's assignments are related to operation of a particular segment of the business; whether the employee has authority to commit the employer in matters that have significant financial impact; whether the employee has authority to waive or deviate from established policies and procedures without prior approval; whether the employee has authority to negotiate and bind the company on significant matters; whether the employee provides consultation or expert advice to management; whether the employee is involved in planning long- or short-term business objectives; whether the employee investigates and resolves matters of significance on behalf of management; and whether the employee represents the company in handling complaints, arbitrating disputes or resolving grievances.

29 C.F.R. § 541.202(b). The phrase "work involving discretion and independent judgment" implies that an employee "has authority to make an independent choice, free from immediate direction or supervision." 29 C.F.R. § 541.202(c). Employees, however, can still exercise discretion and independent judgment even if their decisions or recommendations are subject to review. *Blanchar*, 736 F.3d at 757-58.

The exercise of discretion and independent judgment does not, however, include clerical or secretarial work, recording or tabulating data, or performing other mechanical, repetitive, recurrent or routine work. 29 C.F.R. § 541.202(e). An employee who simply tabulates data is not exempt, even if labeled as a "statistician." *Id.* Thus, a proper analysis of this element rests on the plaintiff's "day-to-day duties . . . [and] not merely the parties' characterization of those duties as involving discretion or not." *Brown v. Ind. Univ. Health Ball Mem'l Hosp., Inc.*,

25

No. 1:14-cv-00921-JMS-TAB, 2015 WL 6142269, at *8 (S.D. Ind. Oct. 19, 2015)

(citing *Schaefer-LaRose*, 679 F.3d at 580).

The Defendant asserts that because the Plaintiff admitted during her

deposition that she exercised discretion and independent judgment in engaging

with customers, customer fuel pricing, and handling finances, it is clear that the

third criterion of the administrative exemption test is met. (Dkt. 78 at 16). Here, the

Plaintiff was the only full-time liquid fuels support staff in Harvest Land's Junction

office. (Young Dep. 22:13-24, Dkt. 79-1 at 8). Ms. Young's responsibilities involved

handling liquid fuels support and 90-95% of her work consisted of paperwork or

other data entry tasks. (Young Dep. 22:20-23, 26:8-9, Dkt. 79-1 at 8-9). As noted

above, a substantial portion of her job involved routine tasks and following the

directives of her supervisor. While Ms. Young engaged with employees, exercised

some discretion, and completed service invoices for Harvest Land's technicians, the

evidence is not clear that Ms. Young exercised discretion and independent

judgment.

Harvest Land has failed to present any evidence that Ms. Young had the

authority to implement management policies, performed work that affected Harvest

Land's business operations to a substantial degree, or that she had the authority to

commit Harvest Land in matters that had significant financial impact. Moreover,

there is no evidence that Ms. Young had the authority to waive or deviate from

established policies and procedures; that she made recommendations for action to

management; or that she represented Harvest Land in handling complaints, arbitrating disputes, or resolving grievances.

Instead, the facts demonstrate that when Ms. Young needed to deviate from the company's standard formulas or practices, she would consult with her supervisor first. While Ms. Young's supervisor trusted her to use her independent judgment in handling her specific responsibilities at Harvest Land, (Young Dep. 26:5-14, 27:15-18, Dkt. 79-1 at 9), this does not mean that Ms. Young exercised discretion and independent judgment within the concept of the administrative exemption.

The Defendant overemphasizes the Plaintiff's independent interactions with customers and third parties. Viewing the facts in the light most favorable to the Plaintiff, the Plaintiff's role was limited to that of a "middleman" between her supervisor, Mr. Sellers, and Harvest Land's customers. (Young Dep. 25:6-21, Dkt. 79-1 at 8); *see DeWalt v. Greencroft Goshen, Inc.*, 902 F. Supp. 2d 1127, 1138 (N.D. Ind. 2012) (holding that marketing associate for retirement community had discretion and independent judgment in her position when she determined what aspects of the community met customer needs, and crafting messaging for every aspect of the defendant's service to the public showed control of marketing).

While the Defendant has identified a variety of facts that suggest Plaintiff's primary duties involved the exercise of discretion and independent judgment, the Plaintiff has raised several factual disputes to contest whether these decisions related to any matters of significance at Harvest Land. When construing all

reasonable inferences in favor of Plaintiff, and considering the limitations on Plaintiff's duties, there is a genuine issue of material fact making summary judgment inappropriate on this issue. Accordingly, the Court **DENIES** Defendant's motion for summary judgment as to Plaintiff's exempt status under the FLSA.

### ii. *Establishing a FLSA Overtime Wage Claim*

The Defendant maintains that even if the Court finds that Harvest Land has failed to clearly establish Ms. Young's exempt status from the FLSA's overtime requirements, Ms. Young's claim still fails as a matter of law because she cannot prove that she performed work for which she was not compensated. (Dkt. 78 at 18).

The FLSA provides that "no employer shall employ any of his employees . . . for a workweek longer than forty hours unless" it pays the employees overtime pay. 29 U.S.C. § 207(a). An employee who brings suit pursuant to the FLSA must prove that "[she] performed work for which [she] was not properly compensated." *Tyler v. JP Operations, LLC*, 342 F. Supp. 3d 837, 845-46 (S.D. Ind. 2018) (citing *Melton v. Tippecanoe Cty.*, 838 F.3d 814, 818 (7th Cir. 2016)) (citation omitted). To prevail under this standard, Ms. Young must prove that Harvest Land had actual or constructive knowledge of the overtime she worked, and that she worked overtime without compensation. *Kellar v. Summit Seating, Inc.*, 664 F.3d 169, 176-77 (7th Cir. 2011); *Boillot v. Angie's List, Inc.*, No. 1:16-cv-1452-RLY-MJD, 2018 WL 2063872, at *9 (S.D. Ind. Mar. 27, 2018).

Harvest Land maintains that it is entitled to summary judgment because Ms. Young lacks sufficient evidence regarding the amount of unpaid overtime for which

she seeks compensation. Specifically, the Defendant argues that the Plaintiff has insufficient evidence to show that she worked 50 hours per week between 2017 and 2018. (Dkt. 78 at 18). In response, the Plaintiff argues that her recollection, supported by the Defendant's internal records, provides sufficient evidence to allow her claim for overtime wages to survive summary judgment. (Dkt. 81 at 11).

### a. *Actual or Constructive Knowledge of Plaintiff's Overtime Hours*

To survive summary judgment with respect to her overtime claim, the Plaintiff must offer sufficient evidence from which a reasonable jury could conclude that Harvest Land had "actual or constructive knowledge" that she was working overtime. *Kellar*, 664 F.3d at 177. Actual knowledge could be demonstrated with evidence that Ms. Young was instructed by Harvest Land not to report her overtime. *Brand v. Comcast Corp.*, 135 F. Supp. 3d 713, 736 (N.D. Ill. 2015). Constructive knowledge requires the Plaintiff to demonstrate that Harvest Land "had reason to know or should have known" that Ms. Young was not being compensated for work she performed. *Kellar*, 664 F.3d at 177. "While an employer cannot slyly sit back in order to reap extra work without pay, it has no obligation to pay for work it did not know about and had no reason to know about." *Gaines v. K-Five Constr. Corp.*, 742 F.3d 256, 270 (7th Cir. 2014). In other words, constructive knowledge is shown if Ms. Young's supervisor "had the opportunity through reasonable diligence to acquire knowledge" that Ms. Young was working more than 40 hours in a workweek. *Brand,* 736 F.3d at 736.

In this case, Ms. Young has presented sufficient evidence that her supervisor knew or should have known that she was working overtime. Ms. Young worked a standard, 8-hour workday: Monday through Friday from 8:00 a.m. to 5:00 p.m. with a 60-minute unpaid lunch period. (Dkt. 82-2 at 7). In support of her recollection of working outside of these standard hours, the Plaintiff provided a Performance Appraisal for Fiscal Year 2017 and a sample of emails; this information corroborates her contention that the burden has shifted to Harvest Land to bring forth evidence rebutting her overtime wage claim. (Dkt. 81 at 11). In her 2017 performance appraisal, Ms. Young's supervisor noted that she was "not afraid to work over when needed." (Dkt. 82-2 at 9). Furthermore, the sample of email communications with customers, employees, and her supervisor demonstrate that Ms. Young was working outside the scheduled workweek. (Dkt. 82-4). In her affidavit, Ms. Young noted that, to her knowledge, Harvest Land kept no records of the actual hours she worked except to track her vacation and sick days. (Young Aff. 2 ¶ 13, Dkt. 82-1). Ms. Young also testified at her deposition that Harvest Land instructed her to only keep track of her vacation and sick time. (Young Dep. 43:4-8, Dkt. 79-1 at 13). Accepting these facts as true for purposes of summary judgment, the Court finds that a reasonable jury could conclude that Harvest Land had constructive knowledge of Ms. Young's overtime hours.

### b. *Evidence of Damages for Plaintiff's Overtime Work*

Evidence of Harvest Land's knowledge that Ms. Young was working uncompensated overtime hours does not end the inquiry; Ms. Young must also

present evidence of damages. *Brown v. Family Dollar Stores of Ind., LP*, 534 F.3d 593, 595 (7th Cir. 2008). At this step, the plaintiff has the burden of proving that she performed overtime work for which she was not properly compensated, and if she contends that her employer's records are not accurate, she must produce "sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." *Melton*, 838 F.3d 818; *Turner v. The Saloon, Ltd.*, 595 F.3d 679, 691 (7th Cir. 2010) (affirming district court decision to grant summary judgment where employee failed to provide evidentiary support for his overtime claim, thus falling short of FLSA burden). "The burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence." *Melton*, 838 F.3d 818.

As noted above, because Ms. Young has called into question the accuracy of Harvest Land's time records, she cannot rely on those records to establish her alleged hours of uncompensated time. Therefore, in order to raise a "just and reasonable inference" as to the amount and extent of hours worked, Ms. Young may rely on her recollection, memory, or other inferences from the particulars of her job. *Brand*, 135 F. Supp. 3d at 741; *see also Brown*, 534 F.3d at 597 (finding that an employee is entitled to base estimates of time worked on "triggering factors" that aid employees in recalling when they worked overtime). While precise corroborating documentation or records is not required under this standard, to survive summary judgment the plaintiff must provide more than bare allegations and undocumented

31

estimates. *Brand*, 135 F. Supp. 3d at 742; *see also Joiner v. Bd. of Trs. of Flavius J.
Witham Mem'l Hosp.*, No. 1:13-cv-555-WTL-DKL, 2014 WL 3543481, at *7 (S.D.
Ind. July 17, 2014) (holding that plaintiffs' assertions that lunches were interrupted
"two or three times a week" and "practically every day" are general assertions
insufficient to overcome summary judgment); *Gatto v. Mortgage Specialists of Ill.,
Inc.*, 442 F. Supp. 2d 529, 535-36 (N.D. Ill. 2006) (finding that plaintiff's mere
declaration that she worked more than forty hours per week "nearly every week"
does not create a genuine factual issue). The employee must still produce evidence
sufficient to substantiate her recollection. *Melton*, 838 F.3d at 818-819. "FLSA
plaintiffs are still bound by the requirements of Rule 56." *Melton*, 838 F.3d at 819.

To demonstrate the amount and extent of the time that she worked overtime
without compensation, Ms. Young relies on her recollection. The Plaintiff argues
that she has raised a just and reasonable inference that she worked 10 overtime
hours every week, excluding vacation or sick leave, because she knows "what time
she would arrive for work, that she worked through the lunch hour except for a
couple months in the year 2018, and the times that she would leave from work."
(Dkt. 81 at 12). Ms. Young also "knows that she regularly took work phone calls and
responded to work emails outside of the office, including on weekends, and is aware
of the frequency of those calls from her review of her phone records." (Dkt. 81 at 12).

In her Complaint, the Plaintiff initially claimed that she regularly worked
between 45 and 55 hours per week between 2017 and 2018. (Complaint 2, Dkt. 79-3
at 2). At her deposition, however, Ms. Young testified that she worked 50 hours

every workweek in 2017 and 2018. (Young Dep. 45:6-15, Dkt. 79-1 at 13). During the discovery process and in her response to the Defendant's Cross Motion for Summary Judgment, the Plaintiff, accounting for vacation and sick leave, submitted an "Updated Damages Calculation" to Harvest Land which identified her total overtime wages allegedly due for 2017 and 2018. (Dkts. 81 at 11, 82-5 at 7). In her damages summary, Ms. Young indicates that she worked 10 hours overtime every week, except for sixteen workweeks, between December 17, 2016 and November 23, 2018; thus, Harvest Land owes her approximately $28,288.03 in overtime wages. (Dkts. 82-5 at 7, 82-6 at 3). The damages summary does not provide a basis for why Ms. Young estimates that she worked 10 overtime hours per week. This is not, however, the only evidence that Ms. Young relies on to support her recollection.

In response to the Defendant's Cross Motion for Summary Judgment, Ms. Young also designated a second affidavit, (Dkt. 82-1); her Performance Appraisal for Fiscal Year 2017, (Dkt. 82-2); emails sent by the Plaintiff outside her scheduled work hours in 2017 and 2018, (Dkt. 82-4); and a portion of the parties' discovery responses. (Dkts. 83-3, 83-4, 83-5, 83-6). Because a plaintiff can create a genuine issue of fact where she supports her approximations with additional evidence from which overtime could be inferred, the question before the Court is whether this additional evidence provides a sufficient basis to calculate Ms. Young's damages.

### 1.   *Evidence of Working During Lunch*

The Court finds that although Ms. Young has provided sufficient evidence to overcome summary judgment, not all of her evidentiary support passes muster to meet her initial burden. In her second affidavit, the Plaintiff estimates that she "worked between forty-five and fifty-five hours per week, averaging fifty hours per week, except for those weeks in which [she] took vacation or sick time." (Young Aff. 2 ¶ 9, Dkt. 82-1). To support this estimation, Ms. Young declares that she "typically" ate lunch at her desk and that she worked through her lunch break. (Young Aff. 2 ¶ 4, Dkt. 82-1). Ms. Young does not, however, create a factual dispute simply by declaring that she worked a certain number of overtime hours per week. *See Joiner*, 2014 WL 3543481, at *7 (finding that general assertions without evidentiary support are insufficient to overcome summary judgment). During her deposition, Ms. Young testified that she occasionally left work during her lunch hour to run personal errands. (Young Dep. 41:17-24, Dkt. 79-1 at 12). Ms. Young also admitted that "sometimes" in August and September 2018 she would "go home for lunch" but would continue to take work calls during this time. (Young Dep. 38:5-39:7, Dkt. 79-1 at 12, Young Aff. 2 ¶ 5, Dkt. 82-1). The Court finds that the language "typically" and "sometimes" suggests guesswork, and is insufficient to survive summary judgment.

To support her recollection, the Plaintiff alleges that she took phone calls and responded to emails during the typical lunch hour, between 12:00 p.m. and 1:00 p.m. (Dkt. 81 at 12), but the Plaintiff failed to designate any phone records or email communications that support this assertion. (*See* Dkts. 82-4, 82-5 at 3, 82-6 at 3-4).

In addition, the Court cannot assume that the Plaintiff worked during her lunch hour every day between 2017 and 2018, especially in light of the Plaintiff's statement that during August and September 2018, she left work to go home during lunch. Moreover, Ms. Young's testimony is internally inconsistent with her damages summary because it does not deduct from her calculation any days in August and September 2018 when Ms. Young admits to taking a lunch break. (*See* Dkts. 82-5 at 7, 82-6 at 3).

Similar to the plaintiff in *Melton*, Ms. Young has failed to produce sufficient evidence to show "the amount and extent" of the hours she worked through lunch "as a matter of just and reasonable inference." 838 F.3d at 820. As the Seventh Circuit has bluntly stated, "summary judgment is the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of the events." *Diadenko v. Folino*, 741 F.3d 751, 757-58 (7th Cir. 2013) (citing *Springer v. Durflinger*, 518 F.3d 479, 484 (7th Cir. 2008)). Without any "triggering factors" or supporting documentation, the Court finds that the Plaintiff's claim that she worked overtime hours during lunch does not rise above the speculative level. Accordingly, Harvest Land's request for summary judgment on Ms. Young's claims arising from allegedly unpaid lunch hours worked is **GRANTED**.

### 2. *Evidence of Pre-Shift and Post-Shift Work*

The Plaintiff also contends that she is entitled to overtime pay arising from the work she performed before and after her standard working hours. (Dkt. 81 at

12). In an effort to support her assertion that she worked 50 hours per week, Ms. Young contends in her second affidavit that she began her "work for Harvest Land each workday at 8:00 a.m. when the office opened" and that she would "sometimes have to start earlier in order to drive to another Harvest Land location and arrive by 8:00 a.m." (Young Aff. 2 ¶ 3, Dkt. 82-1). Ms. Young also stated that she "often left work between 5:30 p.m. and 6:00 p.m., but would work in the office as late as 7:00 p.m. when Harvest Land was busy." (Young Aff. 2 ¶ 3, Dkt. 82-1). Additionally, the Plaintiff indicated that she "routinely" took work calls before and after work and on weekends. (Young Aff. 2 ¶ 7, Dkt. 82-1). These declarations by themselves do not create a genuine factual issue. *Brown*, 246 F. Supp. 3d. at 1220. Ms. Young argues, however, that when coupled with Harvest Land's own internal records, including her Performance Appraisal for Fiscal Year 2017, (Dkt. 82-2); sixteen emails sent by the Plaintiff outside her scheduled work hours in 2017 and 2018, (Dkt. 82-4); and a portion of the parties' discovery responses, (Dkts. 83-3, 83-4, 83-5, 83-6), there is sufficient evidence to substantiate her testimony that she worked overtime hours, thus shifting the burden to the Defendant to negate. (Dkt. 81 at 12). It is here that Ms. Young's argument gains traction.

Ms. Young maintains that evidence from phone records, work emails, and co-workers who witnessed her working outside of her standard workday support her recollection of the amount and extent of her unpaid work under the "just and reasonable inference" standard. (Dkts. 81 at 12, 82-6 at 3, 82-5 at 3). The Defendant does not dispute that this evidence demonstrates that Ms. Young worked outside of

her standard working hours, but argues that this evidence is still insufficient for a juror to conclude that Ms. Young worked 10 uncompensated overtime hours every week. (Dkt. 83 at 6). Specifically, the Defendant maintains that Ms. Young has failed to provide "any evidence showing the amount of time Plaintiff spent on the phone or sending/reviewing emails" nor has she directed the Court to any phone records that would demonstrate the "frequency" of the phone calls. (Dkt. 83 at 7).

In her deposition testimony, discovery responses, and affidavit, Ms. Young points to documentation and "triggering factors" that provide a basis for her recollection. First, at her deposition, the Plaintiff testified that her overtime hours arose when she began traveling to Harvest Land's Monroe office in 2017 "a minimum of 3 times per week." (Young Dep. 45:16-18, Dkt. 79-1 at 13). This travel alone, according to Ms. Young, required her to work 12 hours per day, 3.5 hours of which involved driving time to and from her home to Harvest Land's Monroe office. (Young Dep. 45:16-46:4, Dkt. 79-1 at 13-14).

In her response to the Defendant's Cross Motion for Summary Judgment, the Plaintiff also directs the Court to her 2017 Performance Appraisal wherein her supervisor noted that Ms. Young had been "essential in the Monroe transition." (Dkt. 82-2 at 9). Ms. Young's supervisor also noted that the Plaintiff was willing to "work over when needed" and that she "[would] not leave a job till (sic) it [was] completed." (Dkt. 82-2 at 9). The Court finds that Ms. Young's testimony regarding her travel to the Monroe office, coupled with documentary evidence, provides a sufficient basis for inferring the extra hours worked. *See Espenscheid v. DirectSat*

*USA, LLC*, 705 F.3d 770, 775 (7th Cir. 2013) (noting that an employee could reconstruct unreported time from memory "inferred from the particulars of the jobs" the employee did or estimated in other ways).

In addition, the Plaintiff supplemented the record with numerous emails sent outside of her standard workday. These emails are timestamped before, during, and after regular hours, including on weekends, in 2017 and 2018. (Dkt. 82-4).[3] For example, on Thursday, May 17, 2018 at 6:57 a.m., the Plaintiff's supervisor, Charlie Sellers, wrote to Ms. Young: "please move pricing . . . Thanks and hope you have a peaceful looonnnggg weekend. I won't bug you anymore." (Dkt. 82-4 at 12). That same morning at 7:53 a.m., Ms. Young responded, "Thanks! I'll have to walk someone thru… on road didn't bring my laptop." (Dkt. 82-4 at 12). These emails serve as "triggering factors" that assist Ms. Young in determining when she worked outside of her standard hours. In *Brown*, the Seventh Circuit recognized that under the "just and reasonable" standard, plaintiffs are entitled to base estimates of time worked on "triggering factors" that assist them in recalling when they worked overtime. When viewing the evidence and making all reasonable inferences in favor of Ms. Young, the Court finds that the Plaintiff has presented sufficient evidence to establish a material dispute of fact for pre- and post-shift work.

---

[3] The submitted email communications are tied to assertions that Plaintiff worked outside of her scheduled work hours, including nights up to "a couple times a week," and weekends. (Young Dep. 47:19-48:9, Dkt. 79-1 at 14; Young Aff. 2 ¶ 8, Dkt. 82-1). During her deposition, Ms. Young testified that she worked weekends to check inventories and respond to work emails. (Young Dep. 47:19-22, Dkt. 79-1 at 14, Young Aff. 2 ¶ 8, Dkt. 82-1).

Ms. Young's performance appraisal and work email communications support her recollection of working pre-shift and post-shift overtime outside of her standard working hours. While the Defendant attacks the credibility of Ms. Young's designated evidence, Harvest Land has failed to negate the reasonableness of the inferences to be drawn from the evidence. Crediting Ms. Young's testimony that she traveled 3.5 hours to and from the Monroe office 3 times per week to train employees, with no negation of this testimony by Harvest Land, a jury could reasonably approximate Ms. Young's damages. (*See* Young Dep. 45:16-21, Dkt. 79-1 at 13). With an 8-hour workday and 3.5 hours travel between the office and home, it is reasonable to conclude that Ms. Young worked an additional 10.5 hours per week, or approximately 50 hours per week.

Given that Ms. Young has presented evidence which could lead a reasonable jury to conclude that Harvest Land had actual or constructive knowledge of her unpaid overtime work, along with evidence sufficient to create a genuine dispute as to the amount of her unpaid overtime work as a matter of law, Harvest Land's summary judgment motion is **DENIED** as to Ms. Young's overtime claim arising from allegedly unpaid hours for pre- and post-shift work.

### iii.   FLSA Overtime Compensation Method

Even if the Court finds that there is a question of fact as to whether Ms. Young was properly classified as an exempt employee under the FLSA, the Defendant argues that the Plaintiff's overtime compensation claim should be calculated using the FLSA's "fluctuating workweek" ("FWW") method. (Dkt. 78 at

20). Without specifically addressing why the FWW method is incorrect, the Plaintiff maintains that her overtime claim should be calculated using the FLSA's "variable workweek" method. (Dkt. 81 at 13). To address which overtime compensation method applies to Ms. Young's claim, the Court will address both arguments in turn.

Section 7(a)(1) of the FLSA requires employers to compensate covered employees for any hours worked in excess of forty hours per workweek at an overtime rate not less than one and one-half times their regular rate of pay. 29 U.S.C. § 207(a)(1). When an employee is compensated on an hourly basis, calculating her overtime rate is often straightforward. For example, if the employee earns $20 an hour, she makes $30 for each hour of overtime she works because these extra hours must be compensated at 150% of her regular pay.

Overtime calculation becomes more complicated, however, when considering other compensation schemes. As noted earlier, Harvest Land chose to pay Ms. Young on a fixed salary rate. Under this compensation scheme, similar to the hour basis scheme, overtime premiums must still be paid based on an employees' regular rate of pay for an hour's work. 29 U.S.C. § 778.109. Calculating the regular rate of pay is the "keystone" of the FLSA's overtime provisions, and is necessary to effectuate the FLSA's statutory purpose. *Urnikis-Negro v. Am. Family Prop. Servs.*, 616 F.3d 665, 673 (7th Cir. 2010).

For purposes of the overtime calculation, an employee's regular rate of pay is calculated according to the requirements in 29 U.S.C. § 207(e). In most cases,

employers must pay employees 150% of their regular rate of pay. The FLSA does, however, permit alternative methods for calculating overtime under certain conditions. One such alternative method is the FWW, which Harvest Land argues is operative here.

Under the FWW method, an employer is permitted to pay half-time, rather than time-and-a-half, overtime to certain salaried employees whose hours of work fluctuate from week to week. 29 C.F.R. § 778.114(a). This method is permitted when the employee has reached a mutual understanding with her employer that she will receive a fixed amount as straight-time pay for whatever hours she is called upon to work in a workweek, whether few or many, and that she will be compensated for her overtime pay at 50% of her regular hourly pay. *Condo v. Sysco Corp.*, 1 F.3d 599, 601-02 (7th Cir. 1993). Under this method, a salaried employee's regular rate of pay fluctuates with the hours she works because it is determined by dividing the employee's fixed salary by the actual hours she works in a particular week. *Urnikis-Negro*, 616 F.3d at 683. Thus, if an employee earning $1,000 every week works fifty hours, her regular rate of pay is $20 an hour. Under the FWW method, she would be paid a $10 overtime premium for each of the ten hours she worked over forty hours totaling $100 overtime pay that week.

An employer is entitled to rely on the FWW method of calculating overtime pay when:

>    (1) the employee's hours fluctuate from week to week;

>    (2) the employee receives a fixed salary that remains the same from week to week regardless of the number of hours worked;

> (3) the parties must have a clear mutual understanding that the
> fixed salary is intended to represent all straight-time pay for
> all hours she was called upon to work that week "whether few
> or many;" and

> (4) the employee's fixed salary must compensate her at no less
> than the minimum wage for all hours worked.

29 U.S.C. § 778.114; *see Urnikis-Negro v. American Family Properties*

*Services, Inc.,* No. 06-C-6014, 2008 WL 5539823, at *11-12 (N.D. Ill. July

21, 2008).

Harvest Land argues that the requirements of the FWW are met. (Dkt. 78 at

20-21). To support this contention, the Defendant has offered the affidavit of Luann

Nichol, Harvest Land's Human Resources Manager, which states that "there was a

clear and mutual understanding between Ms. Young and Harvest Land that Ms.

Young's paycheck amount was predetermined and constituted all of Ms. Young's

compensation for each given pay period." (Nichol Declaration ¶ 6-7, Dkt. 79-2). In

her deposition, Ms. Young stated that she knew her salary "wasn't going to change

no matter how much or little [she] worked." (Young Dep. 43:16-18, Dkt. 79-1 at 13).

During 2017, Harvest Land paid Plaintiff an annual salary of $47,499.40 and, in

2018, increased her salary to $48,924.20. (Complaint 2, Dkt. 79-3 at 2, Young Dep.

31:18-32:17, Dkt. 79-1 at 10). Harvest Land maintains that Ms. Young had no

objection to Harvest Land paying her on a fixed salary basis, and she, thus,

understood that she was to be paid the same amount per week regardless of the

number of hours worked. (Young Dep. 32:18-33:6, Dkt. 79-1 at 10). Because Harvest

Land paid Ms. Young an annual salary that did not change regardless of the hours

42

worked, the Defendant maintains there is no genuine issue of material fact that Ms. Young, if found to be a non-exempt employee, should have her overtime pay calculated using the FWW method. (Dkt. 78 at 21).

Unlike the plaintiff in *Urnikis-Negro*, a case which Harvest Land relies on, Ms. Young was expected to work a standard 8-hour workday, with a 60-minute unpaid lunch period, and put in any additional hours, if necessary. (Dkts 81 at 13, 82-2 at 7). Because her hours did not fluctuate below 40 hours per week, Ms. Young maintains that the FWW method is not appropriate. She argues that the FWW method should be limited to those instances when the employer pays an employee's full salary even when the employee fails to complete a full schedule of hours. (Dkt. 81 at 13). With no shortfall of hours, Ms. Young contends that her overtime compensation claim should be calculated using the variable rate of pay. (Dkt. 81 at 13-14). An employee working a "variable workweek," works "a schedule that may call for more or less time at work," and thus she is paid 150% for overtime hours. *Heder v. City of Two Rivers, Wis.*, 295 F.3d 777, 779 (7th Cir. 2002).

Viewing the evidence in the light most favorable to the Plaintiff, the Court finds a triable dispute as to how Ms. Young's overtime compensation, if she is found to be exempt, should be calculated. Here, the undisputed facts do not reveal that there was a clear mutual understanding between Ms. Young and Harvest Land that her fixed salary constituted her straight time pay for any and all hours she worked. *See Heder*, 295 F.3d at 779. Harvest Land has not provided Ms. Young's employment contract, personnel records, or pay stubs to support Ms. Nichols'

contention that there was a meeting of the minds regarding the use of the FWW method to calculate Ms. Young's overtime pay. In the absence of the application of the FWW method, the variable workweek method applies. Because of the genuine issue of material fact regarding whether Ms. Young worked a fluctuating workweek and whether there was a mutual agreement, Defendant's request for summary judgment on this issue is **DENIED**.

### iv. *Liquidated Damages*

Lastly, the Defendant argues that, even if a FLSA violation is found, the Plaintiff's claim for liquidated damages should be barred. (Dkt. 78 at 22). Specifically, the Defendant points to its interrogatory answer where it stated that "[a]cting in good faith and without waiving its attorney client privileges, with the advice of counsel, Defendant reviewed Plaintiff's job duties and responsibilities in determining Plaintiff's classification under the Fair Labor Standards Act." (Dkt. 78 at 22).

In response, the Plaintiff acknowledges the Defendant's interrogatory answer, but asserts that the Defendant proceeded to claim attorney client privilege and prevented the Plaintiff from obtaining any information necessary to determine whether the Defendant acted reasonably and in good faith, especially with regard to what information the Defendant provided to counsel regarding Plaintiff's exempt status. (Dkts. 81 at 14-15, 82-3). As such, the Plaintiff argues, the Defendant has failed to produce evidence that it acted in good faith, and the Plaintiff should be permitted to seek liquidated damages. (Dkt. 81 at 15).

If an employer is found to be in violation of the FLSA, plaintiffs are entitled to liquidated damages equal in amount to the unpaid overtime compensation. 29 U.S.C. § 216(b); *see Braddock v. Madison Cnty.*, 34 F. Supp. 2d 1098, 1113 (S.D. Ind. 1998); *Jones v. Bos-Star Inc.*, No. 1:19-cv-271-HAB, 2020 WL 582764, at *2 (N.D. Ind. Feb. 5, 2020). A court may choose not to award liquidated damages only when the employer proves it acted in good faith and with reasonable grounds to believe that its actions did not violate the FLSA. 29 U.S.C. § 260; *Bankston v. Ill.*, 60 F.3d at 1254. An employer seeking to avoid imposition of liquidated damages under the FLSA "bears a substantial burden in showing that it acted reasonably and with good faith." *Jackson v. Go-Tane Servs., Inc.*, 56 F. App'x 267, 273 (7th Cir. 2003) (citing *Bankston*, 60 F.3d at 1254). The Seventh Circuit has remarked that there is a "strong presumption" in favor of doubling. *Avitia v. Metro. Club of Chi., Inc.,* 49 F.3d 1219, 1223 (7th Cir. 1995) ("Doubling is the norm, not the exception.").

Although neither party addresses this issue in their briefing, the Court concludes that the issue of liquidated damages is premature. Liquidated damages are ripe for application once an employer has been found to have violated the FLSA; in this case, the Court has already determined that factual issues remain as to whether and what extent the Defendant violated the FLSA. Thus, because factual issues remain in dispute, especially with regard to whether the Defendant acted in good faith in classifying the Plaintiff as exempt, the Court **DENIES** the Defendant's request for summary judgment on this issue.

45

## IV.   CONCLUSION

For the reasons discussed herein, Plaintiff's Partial Motion for Summary Judgment, Dkt. [73] is **GRANTED IN PART** and **DENIED IN PART**. Defendant's Affirmative Defenses One, Two, Eight, and Nine are dismissed, however, it is permitted to assert Affirmative Defenses Three and Six at trial. Defendant Harvest Land's Cross Motion for Summary Judgment, Dkt. [77] is **GRANTED IN PART** and **DENIED IN PART.** Ms. Young's FLSA overtime wage claim remains set for trial.

So ORDERED.

Date: 5/19/2020

Doris L. Pryor
United States Magistrate Judge
Southern District of Indiana

Distribution:

Service will be made electronically
on all ECF-registered counsel of record via
email generated by the Court's ECF system.